UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **18-cr-72 (ARR)** |
| — against — | |
| KATELYN TRAMPLER, | **Opinion & Order** |
| Defendant. | |

ROSS, United States District Judge:

On November 27, 2018, Katelyn Trampler pleaded guilty to counts one, five, seven, and eight of the superseding indictment filed in this case. *See* Min. Entry, ECF No. 61. These counts collectively charged that she engaged in a conspiracy to distribute fentanyl and possess fentanyl with intent to distribute and that she possessed fentanyl and heroin with intent to distribute. *See* Superseding Indictment, ECF No. 32. As a result of her plea, Trampler faces a statutory mandatory minimum sentence of 60 months in prison. *See* PSR 22, ECF No. 85; Gov't Sentencing Mem. 1, ECF No. 86; 21 U.S.C. § 841(b)(1)(B)(vi). If, however, she meets the factors identified in 18 U.S.C. § 3553(f) and section 5C1.2 of the sentencing guidelines, the court is permitted to impose a sentence "without regard to any statutory minimum sentence."

In their respective sentencing letters to the court, the parties dispute whether Trampler qualifies for safety-valve eligibility. *See*, Gov't Sentencing Mem.; Def.'s Sentencing Mem., ECF No. 87. The core of their dispute revolves around the third of five criteria for safety-valve eligibility, which requires that "the offense did not result in death or serious bodily injury to any person." § 3553(f)(3); U.S.S.G. § 5C1.2(a)(3). According to the government, two individuals died and one individual nearly died as a result of overdoses that were "caused by the drug conspiracy

in which the defendant participated." Gov't Sentencing Mem. 3. Count two of the superseding indictment charges Trampler's co-defendant, David Wickham, with distribution of a controlled substance containing fentanyl that led to the deaths of these two individuals. *See* Superseding Indictment 2. The government argues that because these deaths occurred as part of the same conspiracy to which Trampler pleaded, Trampler does not meet the third criteria for safety-valve eligibility and, as a result, the court must impose the statutory mandatory minimum sentence. *Id.* This order identifies the court's preliminary conclusions of law regarding this issue and the remaining factual questions that must be resolved prior to sentencing.

## I.     "Offense" Includes "Relevant Conduct"

Section 18 U.S.C. § 3553(f) and section 5C1.2 of the sentencing guidelines use the same language to describe the criteria for safety-valve eligibility. *See* U.S.S.G. § 5C1.2 (noting that "the criteria in 18 U.S.C. § 3553(f)(1)-(5)" is "set forth below"). Of particular relevance here, both the statutory provision and the guideline provide that a defendant will not be eligible for safety-valve relief unless "the offense did not result in death or serious bodily injury to any person." U.S.S.G. § 5C1.2(3); 18 U.S.C. § 3553(f)(3). The defendant argues that the offense to which she pleaded guilty "did not result in death or serious bodily injury" because the superseding indictment "does not charge Ms. Trampler with any offense causing death or serious bodily injury, even though her co-defendant is so charged." Def.'s Sentencing Mem. 4. Thus, the defendant argues that she meets the third criteria for safety-valve eligibility and the court is entitled to sentence her to a term of imprisonment below the statutory mandatory minimum.

In support of this position, the defendant argues that the term "offense," as used in section 5C1.2(a)(3) of the sentencing guidelines and § 3553(f)(3), "should be read, in context, as 'offense of conviction.'" Def.'s Sentencing Mem. 4. As a matter of law, I find that this interpretation is

unsupported by the plain language of the statute and by the commentary to the sentencing guidelines. According to the commentary to section 5C1.2 of the guidelines, the term "offense," as used in subsection (a)(2)-(4), refers to "the offense of conviction *and* all relevant conduct." U.S.S.G. § 5C1.2 comment n.3 (emphasis added). "Relevant conduct" is defined in section 1B1.3(a) of the sentencing guidelines to include "all acts and omissions of others" that are part of "a jointly undertaken criminal activity" if they are (1) "within the scope of the jointly undertaken criminal activity," (2) "in furtherance of that criminal activity," and (3) "reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).

Though these definitions are provided in the sentencing guidelines and not the safety-valve statute itself, neither party argues that the term "offense" carries a different meaning when used in the sentencing guidelines as opposed to § 3553(f). To the contrary, the sentencing guidelines specifically provide that the court may sentence a defendant to a term of imprisonment below the mandatory minimum if the defendant meets the criteria set forth in the *statute*, which is reproduced in the guidelines. U.S.S.G. § 5C1.2(a); *see also United States v. Fernandez*, 526 F.3d 1247, 1252 (9th Cir. 2008) (holding that the term "offense" as used in 18 U.S.C. § 3553(f)(2) refers to "the offense of conviction and all relevant conduct"). The defendant argues that the definition of the term "offense" must be narrower than the definition of "offenses that were part of the same course of conduct or of a common scheme or plan," since the statute uses each term separately, suggesting that they carry different meanings. *See* Def.'s Mem. 4–5. This position, however, is undermined by the fact that section 5C1.2 defines *both* "offense" and "offenses that were part of the same course of conduct or of a common scheme or plan" identically—to refer to "the offense of conviction and all relevant conduct." U.S.S.G. § 5C1.2 comment n.3.

This conclusion is further supported by a comparison between § 3553(f)(2) and § 3553(f)(3). Section 3553(f)(2) precludes safety-valve eligibility where "the *defendant* . . . use[d] violence or credible threats of violence or possess[ed] a firearm or other dangerous weapon . . . in connection with the offense." Section 3553(f)(3), on the other hand, does not limit liability to the defendant's individual activities, and instead provides that safety-valve eligibility is restricted to situations in which "the *offense* did not result in death or serious bodily injury to any person" (emphasis added). As other courts have held, this means that section 3553(f)(2) "allows for consideration of only the defendant's conduct, not the conduct of his co-conspirators." *See, e.g.*, *United States v. Wilson*, 105 F.3d 219, 222 (5th Cir. 1997) (observing that the commentary to the guidelines explain that "the use of the term 'defendant' . . . "limits the accountability of the defendant to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused" (quoting U.S.S.G. § 5C1.2 comment n.4)). Because section 3553(f)(3) does not contain a similar provision that limits liability to the defendant's own activities, "relevant conduct" can be considered in determining whether a defendant satisfies that element of safety-valve eligibility.

Thus, I conclude that the sentencing guidelines and § 3553(f)(3) preclude a defendant's safety-valve eligibility if a death or serious bodily injury resulted from either the offense of conviction or conduct that is relevant to the offense of conviction, as defined in the guidelines.

## II.     The "Relevant Conduct" Inquiry is Narrow and Individualized

Contrary to the government's position, my conclusion regarding the definition of "offense" does not necessarily mean that Trampler is ineligible for safety-valve relief. Though Trampler pleaded guilty to a conspiracy to distribute fentanyl and possess fentanyl with intent to distribute, she did not plead guilty to a conspiracy that resulted in a death. Thus, there is still a factual question

for the court to determine: whether a death resulted from conduct that is relevant to the specific jointly-undertaken activity to which she pleaded guilty.

The sentencing guidelines define "relevant conduct" to include "all acts and omissions of others that were" (1) "within the scope of the jointly undertaken criminal activity," (2) "in furtherance of that criminal activity," and (3) "reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). Importantly, though this language may appear to closely track the substantive law of conspiracy, "the scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy." *United States v. Lanni*, 970 F.2d 1092, 1093 (2d Cir. 1992) (quoting *United States v. Perrone*, 936 F.2d 1403, 1416 (2d Cir. 1991)). In other words, the fact that Trampler pleaded guilty to a conspiracy to distribute certain controlled substances does not automatically mean that any deaths that may have resulted from the acts of her co-defendants constitute relevant conduct for the purpose of her specific "jointly undertaken criminal activity." *See, e.g.*, U.S.S.G. § 1B1.3 commentary n.3(B) ("In order to determine the defendant's accountability for the conduct of others . . . the court must first determine the scope of the criminal activity the *particular defendant agreed* to jointly undertake (*i.e.*, the scope of the specific conduct and objectives embraced by the defendant's agreement)." (emphasis added)).

Moreover, the requirement that the conduct of co-defendants be "reasonably foreseeable in connection with" the jointly undertaken criminal activity serves to further limit the scope of "relevant conduct" for the purpose of a sentencing determination. U.S.S.G. § 1B1.3(A)(iii). The acts of a co-defendant will not be deemed "relevant" simply because the defendant "knew some but not all the aims of the conspiracy." *United States v. Swiney*, 203 F.3d 397, 403 (6th Cir. 2000) (quoting *Lanni*, 970 F.2d at 1095 (Newman, J., concurring)). Instead, in order for the conduct of a

co-defendant to be considered "relevant," the sentencing judge must make a "specific finding" as to whether the defendant "could reasonably have foreseen that the object of the conspiracy" involved the *particular* act or omission in question. *Perrone*, 936 F.2d at 1417. This inquiry is highly individualized and specific to the defendant's own understanding and awareness of the jointly undertaken activity in which she participated. "[T]he Guidelines require the district court to make a particularized finding of the scope of the criminal activity agreed upon by the defendant." *United States v. Studley*, 47 F.3d 569, 575 (2d Cir. 1995). Additionally, "[i]n order for [the] court to sentence a defendant on the basis of criminal activity conducted by a coconspirator, [the] court must make a particularized finding as to whether the activity [undertaken by the coconspirator] was foreseeable to the defendant." *Id.*

United States v. Swiney*, 203 F.3d 397 (6th Cir. 2000), a Sixth Circuit case involving factual circumstances that are similar to those presented here, clarifies this inquiry. In *Swiney*, several defendants pleaded guilty to conspiring to distribute heroin. *Id.* at 400. It was undisputed that one of the defendants sold heroin to an individual who died after using that heroin. *Id.* The question before the court was whether the death could be considered conduct that was relevant to the conspiracy to which the other individuals pleaded. *Id.* In remanding the case to the district court, the Sixth Circuit explained that the death could only be considered "relevant conduct" if the distribution of heroin that resulted in the death of the decedent "was 'reasonably foreseeable' . . . to any of these Defendants" within the purview of section 1B1.3(a)(1)(B) of the sentencing guidelines and its accompanying commentary. *Id.* at 406. In other words, in order for the death to be considered by the court in sentencing each individual defendant, "the district court must find that [each defendant was] part of the distribution chain that l[ed] to [the decedent's] death." *Id.*

Given the highly individualized definition of "relevant conduct," and the persuasive Second Circuit authority consistent with this interpretation, the court adopts the *Swiney* court's formulation of the relevant factual inquiry here. Because the defendant bears the burden of demonstrating that she is eligible for safety-valve relief, she must prove by a preponderance of the evidence that she meets each of the criteria within the safety-valve statute and the accompanying guidelines. *See, e.g.*, *United States v. Aidoo*, 670 F.3d 600, 605 (4th Cir. 2012) ("The defendant bears the burden of prov[ing] that the prerequisites for application of the safety valve provision . . . have been met." (citation omitted)); *United States v. Obaih*, 64 F. App'x 308, 309 (2d Cir. 2003) (summary order) ("As defendant concedes, he bore the burden of demonstrating by a preponderance of the evidence that he satisfied the five criteria set forth in the statute in order to receive safety valve relief."). Therefore, defendant bears the burden of proving, by a preponderance of the evidence, that Wickham's distribution of the drugs that resulted in the death of the decedents was *not* a "reasonably foreseeable" part of the jointly undertaken activity to which she was a participant. The issues are further complicated in this case by the fact that Wickham has not been found guilty of distributing drugs that resulted in the death of the decedents. Instead, Wickham intends to proceed to a trial on his liability, and the trial is not scheduled to begin for several months.

The sentencing record before me does not permit me to make these highly-individualized factual conclusions. Instead, in order for me to resolve the outstanding fact-based questions prior to sentencing, it will be necessary for me to supplement the record by proceeding to a *Fatico* hearing. Given the foregoing discussion of the relevant legal conclusions and remaining factual inquiries, the parties are directed to respond to this order by **Monday, May 6**. In their responses, the parties must address the issues to be resolved at a *Fatico* hearing and the evidence that they

propose to adduce in connection with the resolution of these issues. On Thursday, May 9, during the time that is currently scheduled for sentencing, the court will instead conduct a status conference with the parties and address the plan for proceeding.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:     May 2, 2019
           Brooklyn, New York